# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROWLAND B. STALTER, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-3481** |
| **CAPITAL ONE FINANCIAL CORPORATION** | **SECTION: "S" (2)** |

## ORDER AND REASONS

The motion for summary judgment (Doc. # 16) by defendant Capital One Financial Corporation is **GRANTED.**

## BACKGROUND

Plaintiffs Rowland Stalter and Thomas Hebert were long-term insurance salesmen with the Hibernia Insurance Agency. During their employment with Hibernia, plaintiffs received bonuses in the form of stock options. In January 2002, 2003, and 2004, Stalter received options to purchase Hibernia stock, totaling 19,500 shares. In 2003 and 2004, Hebert received options, totaling 7,000 shares. The options' original expiration dates were in 2012, 2013, and 2014, depending upon when each was issued.

In November 2005, Hibernia merged with defendant Capital One, which did not change the name of the insurance agency. Plaintiffs continued to work for Hibernia, then a wholly owned

subsidiary of Capital One. In November 2005, Capital One gave notice to the Hibernia Insurance Agency employees that the original vesting dates reflected on their options were no longer in effect, and that the options were immediately vested and converted to options for Capital One stock. Additionally, Capital One opened at no cost an E*Trade account for each employee with stock options for access and management purposes.[1] Plaintiffs and the other employees were informed that their stock and stock options could be viewed in those accounts, and were provided passwords and credit cards.

On March 1, 2001, Capital One sold most of the insurance business owned by Hibernia to Hub International. The name of the company was then changed to Hub International and plaintiffs became employees of Hub. Under the stock option agreements, Stalter had 90 days from his termination of employment with Capital One to exercise this then outstanding 2002, 2003, and 2004 stock options.[2] Hebert's 2003 and 2004 stock options were retirement-eligible due to Hebert's age and length of service, and under the stock option agreements, Hebert had one year from his

---

[1] At his deposition, Stalter testified that he was aware that an E*Trade account had been opened in his name by defendant. Further, at his deposition, Hebert testified that he was also aware of his E*Trade account, and that notifications about his stock options were put in the E*Trade account.

[2] The 2002 and 2003 stock options were subject to identical "Nonstatutory Stock Option Grant Terms and Conditions," which state that if the optionee's employment with Hibernia is terminated for any reason other than death, disability or retirement, the options must be exercised within 90 days of the date of such termination, or they will expire. *See* defendant's memorandum in support, Affidavit of David Maready, Senior Manager, Executive Compensation and Equity, Capital One, Ex. B, attachments F and G, §3(d)(iii) (Doc. #16). The 2004 stock option agreement similarly provides that if the optionee's employment ceases for reasons other then retirement, death or disability, the option must be exercised withing 90 days from the date of termination. *See* defendant's memorandum in support, Affidavit of David Maready, Senior Manager, Executive Compensation and Equity, Capital One, Ex. B, attachment Ex. E, §3(a and b) (Doc. #16). Stalter testified that during his employment with Hibernia, he had been given copies of the stock option agreements.

termination to exercise his 2003 option, and three years to exercise his 2004 option.[3]

Plaintiffs allege that in November and December 2007, plaintiffs, independently, checked their E*Trade accounts for the first time, and learned about the time delays for exercising the stock options. By this time, Stalter's 2002, 2003 and 2004 stock options were expired and unexercised.

On March1, 2008, Hebert's 2003 option expired and was unexercised. Hebert's 2004 option remains outstanding and will expire, if unexercised, on March 1, 2010.

Plaintiffs argue that the Hub transaction was not an event that accelerated the expiration date of their stock options, and that defendant has breached its contractual obligation to plaintiffs by refusing to restore their stock options, or pay them the value the options had during the ninety-day period commencing on March 1, 2007. Plaintiffs argue alternatively that if the court finds that the Hub transaction did accelerate the options, defendant breached their duty to notify plaintiffs of the expiration dates.

Defendant moves for summary judgment, arguing that the stock option contracts between defendant and plaintiffs clearly provided that plaintiff Stalter had 90 days from his termination in which he could exercise his options, and that plaintiff Hebert had one year from his termination in which he could exercise his 2003 option, and three years from termination to exercise his 2004 option.

---

[3]*See* defendant's memorandum in support, Affidavit of David Maready, Senior Manager, Executive Compensation and Equity, Capital One, Ex. B, attachments B, Item 3a; G, §§3, 10, and 12; and H, Articles 2.26 and 6.4 (Doc. #16). Hebert testified that during his employment with Hibernia, he had been given copies of the stock option agreements and that he signed nonstatutory stock option agreements on January 28, 2002, and January 27, 2003, which referred to the terms and conditions of the stock options.

**ANALYSIS**

**A. Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[4] If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[5]

**B. Stock Options**

Plaintiffs contend that no one at Capital One or Hibernia told plaintiffs that their stock options would have to be exercised prior to the original expiration dates of the options, or that the Hub transaction would accelerate their right to exercise their stock option rights. Plaintiffs contend that the acceleration was a breach of defendant's obligation to plaintiffs. In the alternative, plaintiffs argue that they "detrimentally relied upon the silence of [defendant]," and that "such silence constituted affirmative misrepresentation" relative to the stock option rights. Plaintiffs argue that "[t]o suggest that an employee who has no intention of leaving his employment should read, and then retain three and four years later, information about what he has to do when he leaves his employment, is simply not realistic, fair or equitable."

"It is well-settled that a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it,

---

[4]*Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c).

[5]*Celeotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

or that the other party failed to explain it to him."[6] "The presumption is that parties are aware of the contents of writings to which they have affixed their signatures ... The burden of proof is upon them to establish with reasonable certainty that they have been deceived."[7] "If a party can read, it behooves him to examine an instrument before signing it ..."[8]

The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.[9] To establish a claim of detrimental reliance, plaintiffs must establish three elements by a preponderance of the evidence: a) A representation by conduct or word; b) justifiable reliance; and, c) a change in position to one's detriment because of the conduct or word.[10]

In this case, the parties do not dispute that plaintiffs received copies of the stock option agreements and that plaintiffs' employment ended with Capital One and started with Hub on March 1, 2008. In their respective depositions, plaintiffs each identified their stock option agreements and their signatures thereto. As a matter of law, plaintiffs are presumed to know the stock option agreement contents and cannot avoid its obligations by contending that they did not read it, that they did not understand it, or that defendant failed to explain it to them.[11] To overcome the presumption,

---

[6]*Aguillard v. Auction Management Corp.*, 908 So.2d 1, 23 (La. 2005).

[7]*Tweedel v. Brasseaux*, 433 So.2d 133, 137 (La. 1983).

[8]*Tweedel*, 433 So.2d at 137.

[9]*Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005).

[10]*Suire,* 907 So. 2d at 59.

[11]*Aguillard,* 908 So.2d at 23.

5

plaintiffs bear the burden of establishing with reasonable certainty that they have been deceived.[12] Plaintiffs, who are sophisticated businessman, have provided no evidence that they were deceived; therefore, plaintiffs are presumed to know the contents of their stock option agreements.

Plaintiffs are unable to show that they detrimentally relied on defendant with respect to the stock option agreements. Plaintiffs can point to no conduct or word upon which they justifiably relied to their detriment.[13] Plaintiffs' assertion that defendant's silence was the offending conduct is not meritorious. Plaintiffs cannot avoid the stock option agreement provisions by contending that defendant failed to explain it to him.[14]

Construing the facts in the light most favorable to the plaintiff, the court finds that there are no outstanding issues of material fact which preclude summary judgment as a matter of law. The motion for summary judgment is **GRANTED**.

New Orleans, Louisiana, this   20th   day of February, 2009.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**

---

[12] *Tweedel,* 433 So.2d at 137.

[13] *Suire,* 907 So.2d at 59.

[14] *Aguillard,* 908 So.2d at 23.